ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| NOEMI RIVERA ROSA<br>**Parte peticionaria**<br><br>v.<br><br>BANCO POPULAR DE PUERTO RICO Y OTROS<br><br>**Parte recurrida** | **TA2026CE00192** | *CERTIORARI*<br>procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso núm.:<br>**BY2025CV00290**<br><br>Sobre:<br>Despido Injustificado (Ley Núm. 80) y otros |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de marzo de 2026.

Comparece ante nos, Noemí Rivera Rosa, en adelante Sra. Rivera Rosa o peticionaria, y nos solicita que revisemos la *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, en adelante TPI-Bayamón, el 12 de diciembre de 2025, notificada el 15 de diciembre de 2025. En la misma, el Foro Recurrido eliminó unas alegaciones sobre daños morales y angustias mentales y sobre ciertos daños económicos, según contenidas en la demanda incoada por la peticionaria, debido a su incumplimiento con varias órdenes judiciales.

Por los fundamentos que expondremos a continuación, *expedimos* el recurso solicitado y *confirmamos* el dictamen recurrido.

**I.**

Debido a la naturaleza de los argumentos de las partes, y con el fin de aclarar el extenso recuento procesal provisto por estas en sus correspondientes alegatos, nos hemos visto en la necesidad de reseñar sustancialmente la totalidad de las incidencias procesales en el caso de marras. Esto incluye un breve trasfondo

contextual del caso *Noemí Rivera Rosa y Otros v. Banco Popular de Puerto Rico/Popular Inc.*, BY2023CV00016, en adelante Caso BY2023CV00016, de cuyo expediente judicial estimamos necesario tomar conocimiento judicial.[1]

En el mencionado caso, el 3 de enero de 2023, la Sra. Rivera Rosa, junto a su entonces esposo, Jorge A. Meléndez Valentín, y la Sociedad Legal de Bienes Gananciales compuesta por ambos, presentaron una *Querella*[2] sobre Despido Injustificado, Discrimen por Impedimento y Represalias[3] contra Banco Popular de Puerto Rico, en adelante, Banco Popular o recurrido.[4] Este último presentó su contestación a la querella el 25 de enero de 2023.[5]

Acontecido el prolongado trámite procesal de este caso, el 27 de febrero de 2024, notificada el 28 de febrero de 2024, el Foro Primario dictó su *Sentencia*.[6] Mediante esta, desestimó la acción al amparo de la Regla 39.2(a) de Procedimiento Civil, 32 LPRA Ap. V, R.39.2(a), y *ordenó su archivo con perjuicio* tras determinar que la parte allí demandante había *incumplido reiteradamente con las órdenes del Tribunal*, y que había demostrado falta de interés en la tramitación de su caso. No obstante, el 3 de abril de 2024, la misma fue enmendada para decretar que el archivo del caso era sin perjuicio.[7]

---

[1] *Véase* la Regla 201 de Evidencia, 32 LPRA Ap. VI, R. 201.

[2] La acción se instó al amparo de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, intitulada *Ley de Procedimiento Sumario de Reclamaciones Laborales*, 32 LPRA sec. 3118. No obstante, el procedimiento se convirtió en uno ordinario por solicitud de las partes. *Véase*, SUMAC Caso BY2023CV00016, entradas núm. 29 y 30.

[3] Estas causas al amparo de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, intitulada *Ley sobre Despidos Injustificados*, 29 LPRA sec. 185a *et seq.*; la Ley Núm. 44 de 2 de julio de 1985, según enmendada, intitulada *Ley para Prohibir el Discrimen contra las Personas con Impedimentos Físicos, Mentales y Sensoriales*,1 LPRA sec. 501 *et seq.*; la *Ley de Estadounidenses con Discapacidades* (ADA, por sus siglas en inglés), 42 USC sec. 12101 *et seq.*; y la Ley Núm. 115 de 20 de diciembre de 1991, según enmendada, intitulada *Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial*, 29 LPRA sec. 194 *et seq.*

[4] SUMAC Caso BY2023CV00016, entrada núm. 1.

[5] *Íd.*, entrada núm. 5.

[6] *Íd.*, entrada núm. 95.

[7] *Íd.*, entrada núm. 103.

Luego de una infructuosa solicitud de reconsideración sobre la enmienda realizada por el Foro Primario,[8] e inconforme con el resultado, Banco Popular recurrió ante un panel hermano de este Tribunal mediante un recurso de apelación fechado el 9 de mayo de 2024, al cual le fue asignado el código alfanumérico KLAN202400466. Tal recurso fue resuelto mediante *Sentencia* emitida el 17 de julio de 2024, notificada el 19 de julio de 2024.[9]

Mediante la misma, el panel hermano de este Tribunal confirmó el dictamen apelado. Sin embargo, dicho panel reseñó las múltiples incidencias procesales que dificultaron el cumplimiento con el descubrimiento de prueba, así como los reiterados incumplimientos de la parte demandante con las órdenes del Foro Primario, la imposición de sanciones por dicha conducta, y los apercibimientos previos a la desestimación de la demanda.

Posteriormente, y *en lo que respecta al caso de marras*, el 20 de enero de 2025, la Sra. Rivera Rosa incoó nuevamente las mismas causas de acción a través de una demanda[10] contra Banco Popular.[11] Como parte de sus alegaciones, reclamó, entre otras cosas, *una suma por concepto de los presuntos daños morales y angustias sufridos, así como una partida por ciertos daños económicos ocasionados por la falta de ingreso económico*. Por su parte, el 21 de febrero de 2025, Banco Popular presentó su contestación a la demanda.[12]

El 3 de abril de 2025, se celebró una vista sobre el estado de los procedimientos.[13] En esta, el Foro Recurrido ordenó que las partes validaran los documentos intercambiados durante el

---

[8] SUMAC Caso BY2023CV00016, entradas núm. 105 y 106.
[9] *Íd.*, entrada núm. 110.
[10] El escrito de la peticionaria fue intitulado *Demanda Enmendada*, a pesar de ser su primera alegación en el caso de marras.
[11] SUMAC TPI, entrada núm. 1. Dado el volumen de los trámites procesales del caso, consultamos directamente las entradas correspondientes al SUMAC del Foro Primario, al cual haremos referencia prospectivamente.
[12] *Íd.*, entrada núm. 6.
[13] *Íd.*, entrada núm. 14.

descubrimiento de prueba iniciado en el Caso BY2023CV00016. Por su parte, el recurrido informó que cursaría un interrogatorio limitado en cuanto a los documentos pendientes de descubrimiento en el pleito anterior. Ante esto, el Foro Primario estableció el 15 de agosto de 2025 como la fecha límite para concluir el descubrimiento de prueba.

Posteriormente, el 15 de agosto de 2025, la Sra. Rivera Rosa solicitó una breve prórroga de cinco (5) días para concluir el descubrimiento de prueba, toda vez que se había retrasado en la producción de la evidencia documental que le fue solicitada por Banco Popular dentro de la fecha originalmente establecida.[14]

Simultáneamente, Banco Popular solicitó la extensión del descubrimiento de prueba por treinta (30) días adicionales.[15] Ello, tras denunciar varios incumplimientos de la peticionaria con sus deberes durante el descubrimiento de prueba, a saber: haber contestado el pliego de interrogatorios en exceso del término reglamentario y sin los documentos en él requeridos; y la falta de notificación del listado de la evidencia documental producida en el Caso BY2023CV00016, según ordenado por el TPI-Bayamón durante la vista del 3 de abril de 2025.

Adicionalmente, el 20 de agosto de 2025, el recurrido solicitó que se le ordenara a la peticionaria la producción de los documentos solicitados en o antes del 25 de agosto de 2025,[16] so pena de sanciones o la desestimación del caso.[17]

En respuesta, en la misma fecha, la Sra. Rivera Rosa informó haber remitido a Banco Popular el listado de los documentos descubiertos en el Caso BY2023CV00016, así como la evidencia documental que presentaría; la cual incluía un informe

---

[14] SUMAC TPI, entrada núm. 29.

[15] *Íd.*, entrada núm. 30.

[16] Tal solicitud responde a que el representante legal de la peticionaria informó que produciría los documentos solicitados el 18 de agosto de 2025. *Véase* SUMAC TPI, entrada núm. 29, anejo 1.

[17] *Íd.*, entrada núm. 31.

pericial de los daños morales presuntamente sufridos.[18] En consecuencia, el Foro Primario tomó conocimiento de lo informado, y concedió la extensión del término para concluir el descubrimiento de prueba.[19]

No obstante, el 9 de septiembre de 2025, Banco Popular presentó una *Moción al Amparo de la Regla 34 de Procedimiento Civil para que se Ordene a la Parte Demandante a Producir lo Solicitado So Pena de Desestimación y se Impongan Sanciones.*[20] En este último escrito, el recurrido solicitó, *por segunda ocasión,* la intervención del Foro Primario para compeler a la Sra. Rivera Rosa a cumplir adecuadamente con el descubrimiento de prueba en un término perentorio de tres (3) días, toda vez que las contestaciones y los documentos solicitados fueron provistos de manera vaga e imprecisa. En específico, el recurrido resaltó la relevancia de obtener la pormenorización de la información relacionada a los daños alegados. Ante ello, reiteró su solicitud de desestimación e imposición de sanciones contra la Sra. Rivera Rosa, por la dilación y costos provocados por el continuo incumplimiento con las reglas aplicables al descubrimiento de prueba.

En la misma fecha, la Sra. Rivera Rosa presentó una moción mediante la cual su representante legal ofreció varias razones[21] para justificar la dilación en suplementar las contestaciones aludidas.[22] Por ello, solicitó que se le concediera hasta el 15 de septiembre de 2025 para cumplir con lo solicitado por el recurrido.

En virtud de lo anterior, el 11 de septiembre de 2025, el Foro Primario notificó una *Orden* para conceder la prórroga solicitada por la peticionaria.[23]

---

[18] SUMAC TPI, entrada núm. 34.
[19] *Íd.*, entradas núm. 35 y 36.
[20] *Íd.*, entrada núm. 37.
[21] Entre ellas, que tuvo que posponer la suplementación de sus contestaciones debido a la necesidad de atender varias reuniones urgentes con otros clientes.
[22] SUMAC TPI, entrada núm. 38.
[23] *Íd.*, entrada número 40.

A pesar de esto, el 16 de septiembre de 2025, Banco Popular denunció, *por tercera ocasión,* el incumplimiento de la orden judicial previa, no sin antes resaltar el patrón persistente de inobservancia procesal desplegado por la peticionaria —desde la tramitación del Caso BY2023CV00016 hasta el caso de marras— para argumentar la procedencia de su solicitud de remedios al amparo de la Regla 39.2 de Procedimiento Civil.[24]

En consecuencia, el 17 de septiembre de 2025, el Foro Recurrido notificó otra *Orden* a través de la cual ordenó a la peticionaria el cumplimiento inmediato del descubrimiento de prueba, so pena de imponerle sanciones económicas ascendentes a quinientos dólares ($500.00) por cada día que incumpla con lo ordenado.[25] Adicionalmente, le advirtió que procedería con la desestimación con perjuicio de su causa de acción en el caso de que el referido incumplimiento persistiera por cinco (5) días. *Tal orden fue notificada directamente a la dirección física de la Sra. Rivera Rosa.*[26]

El 22 de septiembre de 2025, la Sra. Rivera Rosa informó haber suplementado sus contestaciones a los interrogatorios, así como haber provisto varios documentos solicitados por Banco Popular,[27] de lo cual el Foro Primario tomó conocimiento.[28] Con relación a los daños morales alegados, esta presentó un suplemento a su contestación a los únicos efectos de informar que su reclamación se apoyaba en el informe pericial previamente sometido, y que la cuantía reclamada por tal concepto fue calculada por su abogado a base de otros casos presuntamente similares.[29]

---

[24] SUMAC TPI, entrada núm. 42.
[25] *Íd.*, entrada núm. 43.
[26] *Íd.*, formulario de notificación electrónica.
[27] *Íd.*, entrada núm. 44.
[28] *Íd.*, entrada núm. 45.
[29] *Íd.*, entrada núm. 44, anejo 2, pág. 10.

No obstante, el 24 de septiembre de 2025, Banco Popular denunció, *por cuarta ocasión,* varios incumplimientos procesales[30] por parte de la Sra. Rivera Rosa.[31] En virtud de lo anterior, el 30 de septiembre de 2025, el Foro Recurrido le impuso a la peticionaria sanciones por la cantidad de quinientos dólares ($500.00), los cuales debía consignar en un plazo de diez (10) días.[32]

Simultáneamente, el 30 de septiembre de 2025, la Sra. Rivera Rosa presentó una *Moción Informativa,* en la cual adujo haber satisfecho los incumplimientos imputados, para los cuales nuevamente ofreció las razones[33] que ocasionaron los mismos.[34]

En esta misma fecha, además, se celebró la Conferencia con Antelación a Juicio y Vista Transaccional de manera presencial.[35] No obstante, esta fue recalendarizada debido a que *la peticionaria y su representante legal no comparecieron a la misma.*[36] Por tal razón, surge que el Foro Primario expresó lo siguiente:

> Se hace constar que el tribunal ha tenido que intervenir en varias ocasiones en relación con el descubrimiento de prueba e imponer sanciones y al día de hoy no es la excepción. Advierte, que no compareció la demandante, ni su representación legal. Que se radicaron unas mociones pasadas la 1:00 p.m. para un caso que era hoy a las 2:00 p.m.
>
> Se concede un término de 20 días a la parte demandada para que ponga en condición al tribunal sobre si se cumplió con el descubrimiento de prueba. De igual forma, se imponen $500.00 de sanciones a la parte demandante por

---

[30] A saber, la falta de diligencia en remitir su parte del Informe Conjunto de Conferencia con Antelación a Juicio antes de la fecha establecida por el Foro Primario para someterlo, y la remisión incompleta de los documentos solicitados durante el descubrimiento de prueba.

[31] SUMAC TPI, entrada núm. 46.

[32] *Íd.*, entrada núm. 47.

[33] Esta vez, el representante legal de la peticionaria excusó la inobservancia de sus deberes procesales en una situación de salud de la Sra. Rivera Rosa, y en una presunta inadvertencia suscitada con su correo electrónico durante el presunto envío de su escrito.

[34] SUMAC TPI, entrada núm. 49.

[35] *Íd.*, entrada núm. 52.

[36] En esta ocasión, el abogado de la peticionaria intentó excusar su incomparecencia bajo el pretexto de que entendía que la vista había sido candelarizada de modo virtual. Sin embargo, del expediente surge que la misma fue candelarizada de manera presencial desde la vista del 3 de abril de 2025. *Véase* el SUMAC TPI, entrada núm. 14.

no haber comparecido, la cual deberá pagar en o antes de 10 de octubre. De no haber pagado las sanciones en o antes de esta fecha, *se van a eliminar las alegaciones de la demanda.* Se hace la salvedad que estas sanciones nuevas impuestas únicamente guardan relación con la vista que se iba a celebrar en el día de hoy que no se pudo celebrar por la ausencia de la parte demandante, que es la promovente en su caso. Cancela sello de suspensión en el día de hoy. Se hace constar que no se ha atendido la situación del descubrimiento de prueba, que se pretendía esclarecer hoy; además de cualquier situación con el informe de conferencia con antelación a juicio. De haberse cumplido con el descubrimiento de prueba, así mismo deberán notificarlo. *Se ordena notificar minuta a la demandante Noemi Rivera Rosa para que este en conocimiento de lo que está sucediendo y los riesgos que se tienen de no cumplir con el pago de las sanciones y el descubrimiento de prueba.*

(Énfasis suplido).

En consecución, el 8 de octubre de 2025, el recurrido reiteró su solicitud de desestimación al amparo de la Regla 39.2 de Procedimiento Civil, *supra,* luego de pormenorizar, *por quinta ocasión,* las deficiencias contenidas en las contestaciones suplementadas por la Sra. Rivera Rosa.[37] Sobre aquellas pertinentes a los daños reclamados, alegó que la peticionaria nuevamente incumplió al no proveer los documentos que evidenciaran los presuntos daños económicos, ni el desglose de los daños morales y angustias mentales presuntamente sufridos junto al cómputo utilizado para fijar las cuantías reclamadas.

El 10 de octubre de 2025, luego de que la peticionaria se opusiera a lo solicitado por Banco Popular[38], el Foro Recurrido notificó una *Orden* mediante la cual ordenó a las partes a realizar esfuerzos razonables con el ánimo de finiquitar extrajudicialmente

---

[37] SUMAC TPI, entrada núm. 53.
[38] *Íd.*, entrada núm. 54

cualquier controversia sobre el mismo previo a acudir al Tribunal para cumplir con el descubrimiento de prueba.[39]

Asimismo, el 16 de octubre de 2025, el Foro Primario notificó una *Orden* para que la peticionaria cumpliera con el pago de las sanciones previamente impuestas en un término de diez (10) días.[40] Además, *ordenó que dicha orden fuese notificada directamente a la Sra. Rivera Rosa, bajo el apercibimiento de que el incumplimiento con las órdenes judiciales conllevaría la eliminación de sus alegaciones.*

Así las cosas, el 29 de octubre de 2025, se celebró la Conferencia con Antelación a Juicio y Vista Transaccional.[41] En esta, el Foro Primario ratificó solamente las sanciones previamente impuestas contra la peticionaria por su incumplimiento con el descubrimiento de prueba, a ser satisfechas en un término de cinco (5) días, *so pena de eliminar sus alegaciones.* Por su parte, la representación legal de Banco Popular informó la subsistencia de dos (2) objeciones relacionadas al interrogatorio cursado a la Sra. Rivera Rosa.

Posteriormente, el 14 de noviembre de 2025, Banco Popular solicitó, *por sexta ocasión,* la intervención del Foro Primario.[42] Esta vez, alegó que, a pesar de haberle ofrecido a la peticionaria múltiples oportunidades para que aclarara extrajudicialmente los asuntos pendientes del descubrimiento de prueba, sus esfuerzos fueron infructuosos. En específico, insistió que se eliminaran las alegaciones sobre los daños reclamados, en la medida que la Sra. Rivera Rosa volvió a incumplir con el suministro de las partidas

---

[39] SUMAC TPI, entrada núm. 55.
[40] *Íd.*, entrada núm. 59.
[41] *Íd.*, entrada núm. 62.
[42] *Íd.*, entrada núm. 64.

debidamente desglosadas y la documentación que las respalda, según se le ha solicitado desde el 7 de julio de 2025.[43]

Por su parte, el 20 de noviembre de 2025, la Sra. Rivera Rosa presentó una moción a los únicos efectos de informar el cumplimiento con el pago de la sanción económica en dicha fecha.[44]

En virtud de lo informado por el recurrido, el 24 de noviembre de 2025, el Foro Primario concedió un término de quince (15) días para que la Sra. Rivera Rosa expusiera su posición en cuanto a los incumplimientos denunciados por Banco Popular, *así como las razones por las cuales no debían eliminarse sus alegaciones.*[45]

Así las cosas, el 24 de noviembre de 2025, Banco Popular presentó una moción mediante la cual informó que, entre otras cosas, por acuerdo entre las partes, la peticionaria proveería la información y la documentación sobre los daños alegados en o antes del 1 de diciembre de 2025.[46]

Posteriormente, el 10 de diciembre de 2025, el recurrido presentó una *Moción para que se Eliminen las Alegaciones de Daños Emocionales y Económicos.*[47] En esta, denunció, *por séptima ocasión,* el incumplimiento de la Sra. Rivera Rosa con la entrega de la información sobre el desglose y el cómputo de los daños reclamados, a pesar de haberle concedido una prórroga de manera

---

[43] Arguyó, incluso, que la ausencia del desglose detallado en el Informe Conjunto de Conferencia con Antelación a Juicio incide en las exigencias de la Regla 37.4(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 37.4(b).

[44] Para justificar el pago de esta sanción en exceso del término establecido por el Foro Primario, el representante legal de la peticionaria alegó que su cuenta en la aplicación de la Colecturía Virtual del Departamento de Hacienda había sido cancelada, la cual fue presuntamente reestablecida el 20 de noviembre de 2025. Por otro lado, excusó su imposibilidad en comparecer personalmente ante la Unidad de Cuentas de la Secretaría del TPI-Bayamón debido a "múltiples señalamientos presenciales y la atención de asuntos de salud" que impedían su traslado a dichas facilidades.

[45] SUMAC TPI, entrada núm. 67.

[46] *Íd.*, entrada núm. 70.

[47] *Íd.*, entrada núm. 74.

extrajudicial.[48] Por ello, insistió en la eliminación de dichas alegaciones.

En la misma fecha, el Foro Primario emitió una *Orden* mediante la cual concedió hasta el 11 de diciembre de 2025 para que la peticionaria entregara lo solicitado por el recurrido, y *reiteró el apercibimiento de que eliminaría las alegaciones de daños emocionales y económicos de incumplir nuevamente con lo ordenado.*[49] Asimismo, *ordenó la notificación de dicha orden directamente a la Sra. Rivera Rosa.*

Transcurrido el término establecido, el 12 de diciembre de 2025, Banco Popular presentó una *Urgente Moción Informativa en Torno a Incumplimiento de la Parte Demandante con el Descubrimiento de Prueba*, a los fines de denunciar, *por octava ocasión*, el incumplimiento de la peticionaria con la última orden del tribunal.[50]

Horas después, la Sra. Rivera Rosa presentó una *Moción en Cumplimiento de Orden y de Mostrar Justa Causa.*[51] En ella, informó haberle remitido la contestación suplementada al interrogatorio relacionado a los daños emocionales y las angustias mentales alegados, con la información desglosada según solicitada por el recurrido. Adicionalmente, aprovechó su escrito para ofrecer las razones por las cuales incumplió con lo solicitado en el término establecido por el Foro Recurrido.[52]

Así las cosas, el 12 de diciembre de 2025, notificada el 15 de diciembre de 2025, el TPI-Bayamón emitió la orden objeto de

---

[48] Surge que el representante legal de la peticionaria le solicitó hasta el 4 de diciembre de 2025 para remitirle lo solicitado. *Véase* SUMAC TPI, entrada núm. 74, anejo 1.

[49] SUMAC TPI, entrada núm. 75.

[50] *Íd.*, entrada núm. 76.

[51] *Íd.*, entrada núm. 77.

[52] En esta ocasión, el representante legal de la peticionaria nuevamente excusó su incumplimiento debido a que estuvo atendiendo asuntos legales relacionados a otros casos. Ante ello, indicó que su asistente administrativa estuvo ausente de su oficina por motivos de enfermedad, por lo que nadie tuvo oportunidad de acceder al documento solicitado para completar su envío. Además, añadió que también enfrentó un percance de salud, por lo que tampoco pudo acudir personalmente a su oficina para remitir el referido documento.

revisión en el presente recurso.[53] Mediante esta, el Foro Recurrido eliminó las alegaciones sobre daños morales, angustias mentales y sobre daños económicos, según plasmadas en los incisos 57 y 58(b) de la demanda presentada por la Sra. Rivera Rosa. Ello tras determinar que esta última se le había apercibido de tal consecuencia previo a que incumpliese con varias órdenes del Foro Primario.

En desacuerdo, el 30 de diciembre de 2025, la Sra. Rivera Rosa presentó una moción de reconsideración,[54] a la cual Banco Popular se opuso mediante un escrito fechado el 5 de enero de 2026.[55] Sometido dicho asunto, el Foro Recurrido declaró *No Ha Lugar* a la moción de la peticionaria mediante una *Orden* notificada el 15 de enero de 2026.[56]

Aún inconforme con el proceder del Foro Primario, el 17 de febrero de 2026, la Sra. Rivera Rosa recurrió ante esta Curia mediante un recurso de *certiorari*, y señaló la comisión del siguiente error:

> **Erró el TPI al eliminar las alegaciones de daños morales y una partida de los económicos como sanción a pesar del contexto que demuestra que no hubo abandono del descubrimiento de prueba ya concluido, cediendo a estrategia de ventajearía procesal de la parte demandada recurrida y por un retraso de doce horas justificado en un caso en el que el descubrimiento de prueba se extendió a favor de la demandada recurrida hasta el 25 de febrero del 2026.**

El 18 de febrero de 2026, emitimos una *Resolución* mediante la cual ordenamos al recurrido que presentara su posición en cuanto al recurso que nos ocupa en o antes del 27 de febrero de 2026. Además, le concedimos a la peticionaria un término de tres

---

[53] Apéndice del recurso, entrada núm. 79.
[54] *Íd.*, entrada núm. 80.
[55] *Íd.*, entrada núm. 81.
[56] *Íd.*, entrada núm. 82.

(3) días para subsanar las deficiencias de su recurso, en conformidad con la Regla 34 de nuestro Reglamento.[57]

Finalmente, sin trámite adicional alguno ante este Tribunal, el 27 de febrero de 2026, Banco Popular presentó su *Oposición a Expedición de Certiorari*.

Con la comparecencia de ambas partes, procedemos a expresarnos.

**II.**

### A. Certiorari

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Allio v. Santiago Chardón*, 2026 TSPR 13, 217 DPR ___ (2026); *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174-175 (2020).

Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales,

---

[57] *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, págs. 54-57, 216 DPR ___ (2025).

asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

[. . .]

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 710-711 (2019).

Luego de auscultar si el recurso discrecional cumple con las disposiciones de la Regla 52.1 de Procedimiento Civil, supra, el tribunal procederá a evaluar el recurso a la luz de la Regla 40 del Reglamento del Tribunal de Apelaciones, supra. La mencionada Regla expone los criterios que esta Curia deberá considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *Rivera et al. v. Arcos Dorados et al.*, supra, pág. 209; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020).

Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, funge como complemento a la Regla 52.1 de Procedimiento Civil, supra. *Torres González v. Zaragoza Meléndez*, supra. La precitada Regla dispone lo siguiente:

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

*In re Aprob. Enmdas. Reglamento TA*, supra, pág. 63; *Allio v. Santiago Chardón*, supra; *BPPR v. SLG Gómez-López*, 213 DPR 314, 337 (2023).

Sin embargo, ninguno de los mencionados criterios es determinante por sí solo para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *W.M.M., P.F.M. et al. v. Colegio*, 211 DPR 871, 902-903 (2023); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000). *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

### B. Eliminación de las Alegaciones

Nuestros tribunales ostentan la autoridad para intervenir e imponer sanciones a las partes de un caso y a sus abogados cuando estos incumplen con una orden del tribunal. *Mitsubishi Motor v. Lunor y otros*, 212 DPR 807, 818 (2023); *Div. Empleados Públicos UGT v. CEMPR*, 212 DPR 742, 753 (2023); *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 298 (2012). Ello con el fin de desalentar la falta de diligencia y el incumplimiento con sus órdenes. *Mejías et al. v. Carrasquillo et al.,* supra.

De igual manera, el Tribunal Supremo de Puerto Rico ha establecido que la imposición de sanciones es un remedio en contra de la congestión procesal en los tribunales, y un mecanismo para agilizar la resolución de las controversias. *Div. Empleados Públicos UGT v. CEMPR*, supra, pág. 754; *Lluch v. España Service Sta.*, supra, págs. 748-749. En virtud de esto, el tribunal está facultado para "imponer sanciones cuando la conducta de las partes vaya en perjuicio de la eficiente administración de la justicia". *Div. Empleados Públicos UGT v. CEMPR*, supra; *Pérez Torres v. Acad. Perpetuo Socorro*, 182 DPR 1016, 1035 (2011); *Lluch v. España Service Sta.*, supra, pág. 749.

En lo que respecta a la imposición de sanciones como instrumentos para vindicar la autoridad judicial, el tratadista José A. Cuevas Segarra, nos ilustra que:

> Las sanciones deben aplicarse con rigor para que sirvan de manera ejemplarizante y como disuasivo. Sólo cuando los tribunales comiencen a imponer sanciones adecuadas es que los litigantes y abogados que incurren en tácticas indebidas reevaluarán su técnica y enfoque en la litigación. [...] Las dilaciones interminables e injustificadas en el cumplimiento del deber afirmativo de descubrir prueba comprometen los derechos básicos individuales y de la ciudadanía en general, y minan la confianza y fundamento de un sistema bajo el imperio de la ley.
>
> J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2011, 2da ed. Tomo III, Publicaciones JTS, pág. 1007.

Por lo tanto, los tribunales tienen facultad para sancionar a las partes a través de varios mecanismos, cuando, en desobediencia a sus órdenes relacionadas al descubrimiento de prueba, atenten contra la sana administración de la justicia. Asimismo, nuestro Tribunal Supremo ha reconocido que esta facultad admite cierta flexibilidad al momento del tribunal escoger la sanción a imponerse, así como para ajustarla a los hechos, a la causa de acción correspondiente y al propósito que con ella persigue. *Mitsubishi Motor v. Lunor y otros*, supra.

Como parte de los mecanismos aludidos, la Regla 34.3 de Procedimiento Civil permite al tribunal dictar aquellas órdenes que estime justas cuando, por ejemplo, una parte se niega o *deja de cumplir una orden judicial para llevar a cabo o permitir el descubrimiento de prueba solicitado.* 32 LPRA Ap. V, R. 34.3(b).

Entre las órdenes reconocidas bajo la precitada Regla, el tribunal tiene la potestad de emitir "[u]na orden para eliminar alegaciones *o parte de ellas*, o para suspender todos los procedimientos posteriores hasta que la orden sea acatada, para desestimar el pleito o procedimiento, o cualquier parte de ellos, o

para dictar una sentencia en rebeldía contra la parte que incumpla". 32 LPRA Ap. V, R. 34.3(b)(3).

En lo pertinente a la controversia que nos ocupa, nuestro Tribunal Supremo ha expuesto que el efecto de la eliminación total de las alegaciones como sanción equivale a privar "a un litigante de su día en corte para establecer la legitimidad y el mérito de su defensa, lo cual solamente debe hacerse en casos tan extremos que no haya duda de la irresponsabilidad o contumacia de la parte contra quien se toman las medidas drásticas". *Mitsubishi Motor v. Lunor y otros*, supra, pág. 821.

Por lo tanto, la eliminación de las alegaciones es una sanción ejercible únicamente en situaciones desmesuradas, de las cuales se desprenda clara e inequívoca la desatención y el abandono total de la parte con interés. *Mejías et al. v. Carrasquillo et al.*, supra, pág. 298; *Mun. de Arecibo v. Almac. Yakima*, 154 DPR 217, 222 (2001). Similarmente, esta sanción debe ser la consecuencia resultante cuando una parte reiteradamente despliega una conducta indubitablemente irresponsable, irreverente, desafiante, negligente y contumaz al incumplir con una orden del tribunal para descubrir prueba. *Mitsubishi Motor v. Lunor y otros*, supra, pág. 822.

No obstante, estas sanciones deben imponerse juiciosa y apropiadamente dentro de un marco justo, dado que, en ausencia de tal justicia, el tribunal incurriría en un abuso de su discreción. *Mitsubishi Motor v. Lunor y otros*, supra, págs. 819-820; *Mejías et al. v. Carrasquillo et al.*, supra, pág. 298. Ello pues, la eliminación de las alegaciones constituye uno de los castigos más severos para la parte que desobedece una orden para descubrir prueba. *Mitsubishi Motor v. Lunor y otros*, supra, pág. 819.

Ahora bien, no puede obviarse que el incumplimiento con las órdenes judiciales es provocado muchas veces por la negligencia de

los representantes legales de las partes litigantes, sin que estos últimos tengan el conocimiento necesario para corregir inmediatamente la conducta de sus abogados. *HRS Erase v. CMT*, 205 DPR 689, 702-703 (2020).

Por lo tanto, previo a ordenar la eliminación de las alegaciones como sanción, el tribunal debe cumplir con el trámite establecido en la Regla 39.2(a) de Procedimiento Civil, *supra*, la cual dispone como sigue:

> (a) *Si la parte demandante deja de cumplir con estas reglas o con cualquier orden del tribunal,* el tribunal a iniciativa propia o a solicitud de la parte demandada podrá decretar la desestimación del pleito o de cualquier reclamación contra esta o *la eliminación de las alegaciones,* según corresponda.
>
> Cuando se trate de un primer incumplimiento, la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones, tan sólo procederá después que el tribunal, en primer término, haya apercibido al abogado o abogada de la parte de la situación y se le haya concedido la oportunidad para responder. Si el abogado o abogada de la parte no responde a tal apercibimiento, *el tribunal procederá a imponer sanciones al abogado o abogada de la parte y se notificará directamente a la parte sobre la situación.* Luego de que la parte *haya sido debidamente informada o apercibida de la situación y de las consecuencias* que pueda tener el que la misma no sea corregida, el tribunal podrá ordenar la desestimación del pleito o *la eliminación de las alegaciones.* El tribunal concederá a la parte un término de tiempo razonable para corregir la situación que en ningún caso será menor de treinta (30) días, a menos que las circunstancias del caso justifiquen que se reduzca el término.
>
> (Énfasis suplido).

Es decir, debido a la naturaleza drástica de la eliminación de las alegaciones, tal sanción no puede imponerse sin antes amonestar al representante legal de la parte litigante. Si aun así no se logra disuadir el incumplimiento, debe notificarse directamente a la parte litigante sobre los incumplimientos de su representante

legal, así como de los efectos de no tomar la acción correspondiente para corregir la situación. *HRS Erase v. CMT*, supra, págs. 701, 704; *Mejías et al. v. Carrasquillo et al.*, supra, pág. 297.

Por consiguiente, una vez se cumpla previamente con el trámite de la precitada regla procesal, sin que la parte litigante tome acción correctiva alguna para que se cumpla con lo ordenado, el tribunal estará en posición para imponerle cualquiera de las sanciones severas. *Mitsubishi Motor v. Lunor y otros*, supra, pág. 820; *HRS Erase v. CMT*, supra, págs. 702. Solo así, la parte estará impedida de recurrir ante otro foro para alegar que fue despojada injustificadamente de su causa de acción y/o defensa. *Mitsubishi Motor v. Lunor y otros*, supra; *HRS Erase v. CMT*, supra.

Es menester recordar que nuestro ordenamiento jurídico favorece que los casos se ventilen en sus méritos de forma justa, económica y rápida. *Mercado Figueroa v. Mun. San Juan*, 192 DPR 279, 288-289 (2015). Sin embargo, esto no implica que una parte ostente un derecho a que su caso adquiera "vida eterna en los tribunales, manteniendo a la otra en un estado de incertidumbre, sin más excusa para su falta de diligencia e interés en la tramitación del mismo que una escueta referencia a circunstancias especiales". *Colón Rivera v. Wyeth Pharm.*, 184 DPR 184, 202-203 (2012); *Carattini v. Collazo Syst. Analysis, Inc.*, 158 DPR 345, 369 (2003); *Mun. de Arecibo v. Almac. Yakima*, supra, págs. 221-222.

### III.

La Sra. Rivera Rosa recurre ante nos con el fin de impugnar el mecanismo empleado por el Foro Primario para sancionar el incumplimiento que le fue imputado en torno a las órdenes judiciales dirigidas a completar el descubrimiento de prueba. En síntesis, alega que el TPI-Bayamón erró al eliminar sus alegaciones

sobre daños morales y económicos, a pesar de que nunca desatendió sus deberes durante dicho procedimiento.

Aduce que la sanción impuesta fue irrazonable debido a que el incumplimiento imputado se limitaba a un breve retraso en la suplementación tardía de dos (2) interrogatorios previamente contestados con la información solicitada. Por tanto, sostiene que su conducta no fue contumaz, por lo que no existía una circunstancia extrema que ameritara la eliminación de las alegaciones en cuestión.

Por su parte, Banco Popular aduce que la eliminación de las alegaciones no responde al breve retraso en el cumplimiento de la última orden judicial, sino al patrón de inobservancia procesal desplegado por la peticionaria desde el Caso BY2023CV00016 sobre los mismos asuntos del descubrimiento de prueba. Sostiene, además, que la sanción impuesta fue razonable y proporcional, pues el Foro Primario optó por eliminar única y parcialmente aquellas alegaciones relacionadas a las órdenes judiciales incumplidas; todo luego de amonestar al representante legal, y de notificar directamente a la parte del incumplimiento y sus consecuencias. De esta manera, arguye que el Foro Recurrido no aplicó la sanción más severa, por lo que la Sra. Rivera Rosa aún cuenta con su día en corte para dirimir el resto de sus reclamaciones.

Cual citado, los tribunales pueden intervenir para sancionar a las partes por la falta de diligencia y el incumplimiento de sus órdenes relacionadas al descubrimiento de prueba. En el ejercicio de esta facultad, estos pueden elegir la sanción a imponerse, tomando en consideración los hechos particulares del caso, así como la causa de acción correspondiente y el propósito que persigue con la sanción escogida.

Así, los tribunales pueden vindicar su autoridad mediante varios mecanismos, entre ellos, *la eliminación parcial* o total de las alegaciones. No obstante, debido a la severidad de esta sanción, esta solo procede en casos de negligencia y contumacia reiterada. Por tanto, su imposición requiere la amonestación previa al representante legal de la parte litigante, seguido del apercibimiento directo a esta última del incumplimiento y sus consecuencias. Si aun así persiste la desatención de las órdenes judiciales, el tribunal puede aplicar la sanción aludida.

Según hemos detallado en el recuento procesal del caso de marras, la tramitación del descubrimiento de prueba ha sufrido una dilación desmesurada a causa de la evidente desatención de la peticionaria con las órdenes judiciales que compelían el suministro del desglose y el cálculo de los daños reclamados en su demanda.

En virtud de tales circunstancias, nos convencen los argumentos del recurrido al señalar que la eliminación de las alegaciones no operó en el capricho judicial, sino que fue producto de un ejercicio previo y progresivo para disuadir la conducta desobediente y contumaz de la peticionaria y de su representante legal.

Como cuestión de hecho, el Foro Primario no solo había sancionado económicamente al representante legal de la peticionaria por incumplir injustificadamente con las fechas establecidas para descubrir de manera íntegra la información solicitada, sino que se encargó de notificar directamente a la Sra. Rivera Rosa la inobservancia de su abogado en múltiples ocasiones, apercibiéndole específicamente que eliminaría sus alegaciones —desde el 16 de octubre de 2025— de persistir el incumplimiento con sus obligaciones procesales.

Aun con los múltiples apercibimientos reseñados, surge que la peticionaria optó por tomar una postura de inacción ante la

irreverencia de su representante legal en proveer íntegra y oportunamente la información relacionada a los daños reclamados. Ello, incluso, ante los esfuerzos extrajudiciales del recurrido para facilitar el cumplimiento de las órdenes judiciales.

Por lo tanto, un análisis sosegado de las incidencias procesales del caso de marras, contrapuestas al derecho aplicable, nos dirige a concluir que el Foro Primario no abusó de su discreción al imponer la sanción impugnada, luego de cumplir con el trámite dispuesto en la Regla 39.2 de Procedimiento Civil, *supra*. Por lo tanto, el TPI-Bayamón *no incurrió en el error señalado*.

Ahora bien, nos preocupa la persistencia de la conducta desplegada por la Sra. Rivera Rosa y su representante legal durante el descubrimiento de prueba. Hemos constatado que, en efecto, las controversias planteadas sobre las alegaciones de los daños reclamados se remontan al Caso BY2023CV00016, el cual sufrió una desestimación sin perjuicio por las mismas circunstancias que hoy nos ocupa.

Así, en consideración al continuo e inequívoco incumplimiento con sus órdenes, apreciamos que el Foro Primario actuó razonablemente y con clemencia al optar por la eliminación parcial de aquellas alegaciones relacionadas a las controversias desatendidas durante el descubrimiento de prueba. Precisamente, dicha sanción encuentra lógica para disuadir y vindicar su autoridad en este tipo de situaciones.

Igualmente, apreciamos que la *Orden* recurrida no trastoca los derechos de la Sra. Rivera Rosa. Tal como arguye el recurrido, la peticionaria conserva, en efecto, aquellos sobre la mesada y salarios reclamados al amparo de las leyes especiales en las cuales fundamente su causa de acción. Por consiguiente, la eliminación de las alegaciones sobre daños morales y angustias mentales no la dejan desprovista de remedio alguno.

**IV.**

Por los fundamentos antes expuestos, *expedimos* el recurso solicitado y *confirmamos* el dictamen recurrido en su totalidad.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones